

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00266-CV

_____

ZACHARY D. LEONARD, Appellant

V.

CITY OF BURKBURNETT, TEXAS; LAWRENCE CUTRONE; EDDIE STAHR;
MICHAEL GUEVARA; AND FRED TILLMAN, Appellees

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CV2021-0581

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion on Rehearing by Justice Womack

## MEMORANDUM OPINION ON REHEARING

## I. INTRODUCTION

After we issued a memorandum opinion and judgment in this appeal, Appellant and Appellees filed motions for rehearing challenging different parts of our memorandum opinion, but only Appellees challenged part of the judgment. We asked for responses to both motions. After reviewing both motions for rehearing and the parties' respective responses, we deny both motions. However, to clarify our holding on Appellant's claim based on Section 614.023(c) of the Texas Government Code, we withdraw our November 2, 2023 memorandum opinion, and we substitute the following memorandum opinion in its place. We also withdraw the prior judgment and issue a new one so that its date of issuance corresponds with the date of this substituted memorandum opinion.

Appellant Zachary D. Leonard, formerly employed as a police officer by Appellee City of Burkburnett, Texas (the City), filed a lawsuit against the City and certain individuals either currently or formerly employed by it—Appellees Lawrence Cutrone, Eddie Stahr, Michael Guevara, and Fred Tillman (collectively, the Individual Defendants)[1]—following the 2019 termination of his employment. Appellees filed

---

[1]Cutrone was the City Manager while this suit was pending in the trial court, and Stahr is the former Chief of Police. As of November 2022, Tillman was the Chief of Police, and Guevara the City Attorney. Although we refer to Cutrone, Stahr, Guevara, and Tillman collectively as the Individual Defendants, Leonard purported to sue them in both their official capacities and their individual capacities. In our

pleas to the jurisdiction, requesting that the trial court dismiss all of Leonard's claims brought against them for lack of subject matter jurisdiction. Through two separate orders, the trial court granted the pleas to the jurisdiction and dismissed all of Leonard's claims. Leonard raises twelve issues in this appeal; underlying all of his complaints is the general argument that the trial court erred by granting the pleas to the jurisdiction and dismissing all of his claims against Appellees. We will affirm in part and reverse and remand in part.

## II. BACKGROUND

### A. Leonard is employed by the City as a police officer, organizes efforts to obtain civil-service protection for the City's police-department employees, injures a teenager during a soccer game, and is fired by the City.

As alleged in his live petition, Leonard began his employment as a police officer for the City in 2005. While employed by the City, Leonard was a founding member of the Burkburnett Police Association (the Association), and he served numerous terms as the Secretary-Treasurer of the Association. In 2018, the Association identified alleged morale issues and leadership deficiencies in the City's police department. That same year, the Association undertook an effort to obtain voter approval for civil-service protection for the City's police-department employees. Leonard "was the primary participant in the effort to obtain approval for civil service." According to Leonard, the City's leadership—including Stahr, the City's

discussion, we will address Leonard's claims against the Individual Defendants in both capacities.

3

police chief at the time—opposed the Association's efforts to obtain voter approval for civil-service protection. As alleged by Leonard, City leaders retaliated against Association members by making "threats of shift changes . . . and demotions."

In December 2018—while public debate concerning the civil-service issue was ongoing—Leonard participated in an alumni soccer game at Burkburnett High School. During that soccer game, Leonard collided with a teenager on the opposing team, causing the teenager to suffer injuries. The teenager's parent filed a complaint with the City's police department concerning the incident. According to Leonard, Stahr told him that he would be subjected to an internal affairs investigation and a criminal investigation[2] due to the incident.

---

[2]Throughout his pleadings in the trial court, including in his live petition, Leonard alleged that he was subjected to "a retaliatory internal affairs investigation" and a "retaliatory criminal investigation" due to the soccer-game incident, that he was arrested and charged with assault stemming from that incident, that the "frivolous criminal prosecution" stemming from the incident was later dropped, that he was pursuing an expunction relating to his arrest and charge, and that Appellees had opposed his expunction with "overt acts . . . intended to violate [his] civil rights." On appeal, Leonard filed in this court a "Motion to Request that Oral Argument Not be Uploaded to the Court's Website and to Request Redactions of the Record and Appellees' Brief" (the Motion). In the Motion, Leonard stated that an expunction order had been granted in his favor in July 2022 and that Appellees and others had violated that order by discussing expunged matters in their brief. He requested that we not upload oral argument of this appeal to our website, and he asked that we "order appropriate redactions of the appellate record and . . . of Appellees' Brief," as consistent with the expunction order. In light of the Motion, we ordered that the submission of the appeal would take place without oral argument, and we ordered Leonard to "provide us references to the specific language in the appellate record and Appellees' Brief that he request[ed] to be redacted." In response, Leonard filed an amended motion (the Amended Motion) in which he provided a laundry list of

4

In April 2019, Leonard was fired by Cutrone—the City Manager at the time—allegedly due to the soccer-game incident. According to Leonard, Cutrone conducted no investigation, completed no interviews, and reviewed no evidence prior to firing him. Leonard also received a "General Discharge" on his Texas Commission on Law Enforcement (TCOLE) Form F-5, "Separation of Licensee." *See* Tex. Occ. Code Ann. § 1701.452. Leonard alleges that Tillman—Stahr's successor as the City's police

---

hundreds of statements contained in the clerk's record, reporter's record, Appellees' brief, and filings in our court that he sought to be redacted.

We deny Leonard's Motion and his Amended Motion. In reaching that decision, we note that most of the portions of the record that Leonard asks to be redacted are statements that he himself made in the record (for example, statements he made in a petition, an affidavit, or a response to a plea to the jurisdiction). Thus, Leonard himself has put at issue in this case the circumstances regarding the investigation of the soccer-game incident, his arrest, his prosecution, and his expunction proceeding. Although Leonard argues in his Amended Motion that this suit is not a proceeding that arises out of the arrest, the gist of his claims is that City officials—opposed to his Association involvement and civil-service system support—conspired to have sham criminal charges brought against him to mask the true reason that they terminated his employment. Having put the subject matter of the expunged records front and center in his lawsuit, he cannot now hide behind the expunction order, and we decline to make his requested redactions. *See Goss v. Hous. Cmty. Newspapers*, 252 S.W.3d 652, 656 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[B]y bringing this lawsuit regarding his arrest, Goss put the expunged records at issue, and thus appellees are entitled to use them."); *City of Fort Worth v. D.T.*, 165 S.W.3d 425, 430 (Tex. App.—Fort Worth 2005, no pet.) ("Fort Worth may release, disseminate, or use any of its records that are classified as 'expunged records' for the purpose of defending itself in a proceeding arising out of the arrest to the same extent as any entity or member of the general public in the same situation."); *W.V. v. State*, 669 S.W.2d 376, 379 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) ("If the petitioner should file a civil action arising out of his arrest, he necessarily by his own allegations makes the materials contained in the expunged records, as well as the contents of the expunction file, a matter of public record subject to discovery proceedings.").

5

chief—"did not review any documents, statements, or evidence before designating Leonard's F-5 as a General Discharge" and made that designation based solely on instructions from Cutrone and Guevara—the City's attorney.

Leonard appealed his termination to Cutrone but was dissatisfied with the purported lack of "any hearing on his grievance" and with the City's alleged failure to follow proper procedure regarding the appeal of his termination as outlined in the City's Personnel Policy Handbook.[3] Leonard also challenged the "General Discharge" designation on his F-5, appealing that designation to the State Office of Administrative Hearings (SOAH).

## B. Leonard files his original petition against the City, Cutrone, and Stahr.

In March 2021, Leonard filed his original petition against the City, Cutrone, and Stahr, alleging the following claims: (1) denial of his rights without due course of law; (2) denial of equal protection under the law; (3) denial of his right to free speech; (4) denial of his right to freely associate and assemble;[4] (5) wrongful termination;

---

[3]Leonard never explains what this procedure entails, nor does he allege how Appellees failed to follow it. Leonard acknowledges that he spoke at a February 2021 meeting of the Board of Commissioners concerning his termination, but he alleges that because his grievance was not an agenda item, the Board was prohibited by law from acting on it.

[4]For ease of discussion, we will refer generally to the right to assemble when discussing Leonard's claims concerning his right to freely associate and assemble. *See Zaatari v. City of Austin*, 615 S.W.3d 172, 195–98 (Tex. App.—Austin 2019, pet. denied) (discussing the interplay of the right of assembly secured in the Texas Constitution and the right to associate, which is "instrumental to the First

(6) denial of his right to petition; (7) violation of Section 617.005 of the Government Code; and (8) civil conspiracy (collectively, the Eight Claims). Included in his description of the Eight Claims is the allegation that Stahr and Cutrone engaged in official oppression. Leonard's petition also included a claim against the City for an alleged violation of the Texas Open Meetings Act (TOMA). Leonard sought declaratory relief, injunctive relief, mandamus relief, and attorney's fees, but he expressly denied "seeking money damages."

## C. The City, Cutrone, and Stahr file an answer, special exceptions, and a plea to the jurisdiction; Leonard responds to the plea to the jurisdiction and files his first amended petition; and the trial court grants the plea to the jurisdiction with respect to the Eight Claims.

The City, Cutrone, and Stahr answered Leonard's lawsuit and filed special exceptions.[5] They also filed a plea to the jurisdiction, arguing that Leonard's request

---

Amendment's free speech, assembly, and petition guarantees" (quoting *Osterberg v. Peca*, 12 S.W.3d 31, 46 (Tex. 2000))).

[5]The trial court did not rule on these special exceptions. In his reply brief, Leonard contends that the trial court should have ruled on the special exceptions, primarily in support of his argument that he should have been given the opportunity to replead his allegations. Although the City, Cutrone, and Stahr filed these special exceptions in response to Leonard's original petition, they did not file new special exceptions—or re-urge these special exceptions—in response to any of Leonard's amended petitions. Thus, these special exceptions became moot, and the trial court did not err by failing to rule on them. *See Wang v. Univ. of Tex. at Austin*, No. 04-13-00065-CV, 2013 WL 5570824, at *2 (Tex. App.—San Antonio Oct. 9, 2013, no pet.) (mem. op.). Moreover, to the extent that Leonard attempts to assert that Appellees' argument that he failed to plead facially valid theories of recovery could only be raised via special exceptions rather than a plea to the jurisdiction, we overrule such a complaint. A governmental entity is not required to use special exceptions to challenge the facial validity of a plaintiff's pleadings for immunity purposes and may

7

for injunctive relief was unverified in contravention of Rule 682 of the Rules of Civil Procedure, that he had failed to plead a cognizable action in equity and thus had failed to invoke a waiver of immunity, that his claim for the alleged violation of Section 617.005 of the Government Code was not actionable, that he had failed to invoke the trial court's jurisdiction under TOMA, that he had failed to properly plead any declaratory judgment action for which immunity was waived, that his plea of "no damages" was a sham to avoid immunity, and that he had failed to exhaust administrative remedies with the Texas Workforce Commission's Civil Rights Division.

Leonard responded to the plea to the jurisdiction, contending that the trial court had jurisdiction over his claims. Leonard also filed his first amended petition, which asserted the same claims as his original petition but also included his signed affidavit in support of the first amended petition's allegations (the First Affidavit), which he cited in footnotes throughout the facts-alleged section of the pleading.

The trial court later held a hearing on the plea to the jurisdiction and took the plea under advisement. Two weeks after the hearing, the trial court signed an order granting the plea to the jurisdiction with respect to the Eight Claims and dismissing the Eight Claims for want of subject matter jurisdiction. As to Leonard's "remaining

---

instead do so in a plea to the jurisdiction. *See Jefferson County v. Jackson*, 557 S.W.3d 659, 673 n.12 (Tex. App.—Beaumont July 26, 2018, no pet.). Thus, despite Leonard's arguments, the special exceptions filed by the City, Cutrone, and Stahr in their original answer are irrelevant to our analysis.

claims not dismissed," the trial court "allowed [Leonard] the opportunity to amend his pleadings . . . no later than 5:00 PM on October 8, 2021."

## D. Leonard files his second amended petition; the City, Cutrone, and Stahr file their first amended plea to the jurisdiction.

At 4:59 p.m. on October 8, 2021, Leonard filed his second amended petition. Despite the trial court's previous dismissal of the Eight Claims, Leonard included all of them in his second amended petition, including his allegations that Cutrone and Stahr had engaged in official oppression. The second amended petition also included a claim against the City for a TOMA violation, and it included a new claim against the City, Cutrone, and Stahr for the purported violation of subsections (a) through (c) of Section 614.023 of the Government Code.[6] Leonard continued to seek declaratory relief, injunctive relief, mandamus relief, and his attorney's fees. Leonard also attached the First Affidavit to the second amended petition.

Later that month, the City, Cutrone, and Stahr filed their first amended plea to the jurisdiction. They argued that Leonard's second amended petition wrongfully included the Eight Claims that had already been dismissed by the trial court. They also argued that Leonard had again failed to plead any cognizable cause of action for which immunity had been waived and, thus, that he had not invoked the trial court's

---

[6]Leonard alleged that the City, Cutrone, and Stahr terminated his employment without first providing him a copy of a signed complaint, without investigating any alleged complaint against him, and in the absence of any allegations of misconduct by him.

9

subject matter jurisdiction. Specifically, they addressed each of the claims brought by Leonard in his second amended petition—including the Eight Claims—arguing that each of his claims was not a viable cause of action over which the trial court had jurisdiction.

Attached to the first amended plea to the jurisdiction as Exhibit A is a copy of a March 18, 2019 memorandum from Stahr to Leonard—informing Leonard that he had been placed on administrative leave and that an investigation had been ordered—and a Notice of Complaint in Accordance with Government Code Section 614.022, also dated March 18, 2019, and signed by Cutrone. Although the first amended plea to the jurisdiction purports to challenge only whether Leonard had sufficiently *pleaded* jurisdictional facts, the City, Cutrone, and Stahr expressly relied on Exhibit A to argue that Leonard received adequate notice of the claims against him pursuant to subsections (a) and (b) of Texas Government Code Section 614.023. Tex. Gov't Code Ann. § 614.023(a)–(b). The first amended plea to the jurisdiction does not argue, however, that Leonard failed to allege facts sufficient to show a violation of Section 614.023(c)—that Leonard was terminated before an investigation was conducted. *Id.* § 614.023(c).

**E. Leonard files his third amended petition, adding Guevara to the suit; he later files his fourth amended petition, adding Tillman.**

In February 2022, Leonard filed a third amended petition, in which he added Guevara as a defendant. That petition again included the Eight Claims—alleged

10

against "Defendants."[7] It also included his claim for the alleged violation of Section 614.023 of the Government Code, although it no longer included his claim against the City for the purported TOMA violation. Leonard's third amended petition also added a claim against the "Defendants" for an alleged violation of Chapter 101 of the Labor Code. Leonard again sought declaratory relief, injunctive relief, mandamus relief, and attorney's fees, and he added a request for the equitable remedy of reinstatement. He also attached the First Affidavit, as well as a second affidavit (the Second Affidavit) that contained two attachments—a letter from Deputy Eric Wisch of the Wichita County Sheriff's Office and a copy of what Leonard purported to be an email from a City council member to Guevara. Leonard again cited the First Affidavit in support of the facts-alleged section of his third amended petition, and he referenced the Second Affidavit's email attachment in the pleading's facts.

The trial court later entered a scheduling order establishing certain deadlines in the case, including a deadline of 5:00 p.m. on February 18, 2022, for Leonard to file any amended pleadings. The trial court warned, "No additional amendments shall be permitted to [Leonard] without [his] first obtaining leave of Court."

At 4:59 p.m. on February 18, 2022, Leonard filed his fourth amended petition—his live pleading at the time the trial court granted the first amended plea to

---

[7]The petition does not define "Defendants" as a term, but it expressly refers to the City, Cutrone, Stahr, Tillman, and Guevara as a "Defendant."

the jurisdiction. The fourth amended petition added Tillman as a defendant. It also included the Eight Claims—once again, alleged against "Defendants"—and Leonard's claim for the alleged violation of Section 614.023 of the Government Code. The fourth amended petition seemingly[8] added Tillman to the list of those alleged to have violated Chapter 101 of the Labor Code, and it added a new claim against all Appellees alleging a violation of Section 180.001 of the Local Government Code. Further, Leonard accused each of the Individual Defendants of engaging in official oppression and "abuse of authority"; he accused Stahr of initiating a malicious prosecution and Cutrone and Guevara of committing extortion by offering him an honorable discharge on his TCOLE F-5 form only if he resigned instead of having his employment terminated. For all of his claims, Leonard once again sought declaratory relief, injunctive relief, mandamus relief, the equitable remedy of reinstatement, and his attorney's fees. As with his previous petitions, Leonard stated that he was "not seeking money damages."[9] Leonard also attached the First Affidavit and Second Affidavit, and he again referred to both in the facts-alleged section of the pleading.

---

[8]In the pleading's description of his claim for the alleged violation of Chapter 101, Leonard specifically referenced "Cutrone, Stahr, and Guevara" but did not reference Tillman. However, he also alluded to the "violations by Defendants." In his briefing, Leonard clarified that all of his pleaded claims were against the City, every Individual Defendant in his official capacity as an ultra vires claim, and every Individual Defendant in his individual capacity.

[9]In some places in the fourth amended petition, Leonard appeared to be seeking damages. However, he later expressly nonsuited any damages allegations in the fourth amended petition.

**F. Guevara and Tillman answer Leonard's lawsuit, and Appellees file a supplement to the first amended plea to the jurisdiction.**

Guevara and Tillman answered Leonard's lawsuit. Thereafter, Appellees filed a supplement to the first amended plea to the jurisdiction in which they urged dismissal of all of Leonard's claims brought against them. In that filing, they argued, among other things, that Leonard's fourth amended petition included claims that had already been dismissed, that he had not pleaded a valid cause of action under Chapter 101 of the Labor Code or Chapter 180 of the Local Government Code, and that he had failed to allege sufficient jurisdictional facts to support his claims. They also argued—despite the fact that in their pleas to the jurisdiction they had challenged only whether Leonard had pleaded claims that showed a waiver of immunity—that Leonard himself had improperly attempted to rely on his affidavits as "evidence" supporting his jurisdictional allegations.[10] They objected to the affidavits as containing conclusory hearsay and "blatant[ly] contradict[ing]" his pleadings.

**G. The trial court grants Appellees' first amended plea to the jurisdiction, dismisses all of Leonard's claims, and declines to issue findings of fact and conclusions of law.**

Following a hearing on the first amended plea to the jurisdiction, as supplemented, the trial court granted the first amended plea to the jurisdiction and

---

[10]In a previous reply to Leonard's response to the first amended plea to the jurisdiction, the City, Cutrone, and Stahr made similar complaints, alleging that Leonard had "failed to produce even a single scintilla of evidence for any claim" and objecting to the email and Deputy Wisch's letter as unauthenticated and containing inadmissible hearsay.

dismissed all of Leonard's claims against Appellees for want of jurisdiction. Leonard then requested findings of fact and conclusions of law. After requesting authority from both sides regarding whether findings of fact and conclusions of law were required on a trial court's ruling on a plea to the jurisdiction, the trial court determined that they were not appropriate, and it signed an order declining to enter findings of fact and conclusions of law. This appeal followed.

## III. DISCUSSION

While Leonard's brief enumerates twelve issues on appeal, we construe the first ten of them as encompassing a single general complaint: that the trial court erred by granting the plea to the jurisdiction and the supplemented first amended plea to the jurisdiction and by dismissing all of his claims against Appellees. Within that larger complaint are discrete subarguments regarding particular aspects of the merits of Leonard's claims. Because Leonard's last two issues raise procedural challenges that could obviate the need for us to consider the remaining ten, we address them out of order.

### A. Findings of fact not required

In his twelfth issue, Leonard contends that the trial court erred by failing to enter findings of fact and conclusions of law according to Rule of Civil Procedure 297. Tex. R. Civ. P. 297. But "[f]indings of fact and conclusions of law are not appropriate after . . . dismissal for want of jurisdiction without an evidentiary hearing, dismissal based on the pleadings . . . , [or] any judgment rendered without an

14

evidentiary hearing." *Webb v. City of Fort Worth*, No. 02-21-00133-CV, 2022 WL 123219, at *8 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) (quoting *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997)).  Because the trial court's ruling here was based solely on the pleadings—whether Leonard had successfully pleaded a valid waiver of immunity for each claim—we hold that the trial court did not err by declining to enter findings of fact and conclusions of law.  *See Norman v. Williamson*, No. 03-19-00297-CV, 2021 WL 500415, at *4 (Tex. App.—Austin Feb. 11, 2021, pet. denied) (mem. op.).  We overrule Leonard's twelfth issue, and we also overrule his seventh issue, in which he argues that the trial court improperly resolved fact issues at the pleading stage.

**B.  Tillman and Guevara's jurisdiction challenge sufficient**

In his eleventh issue, Leonard contends that the trial court erred by dismissing the claims against Tillman and Guevara because neither of them filed a dispositive motion challenging the Eight Claims.  However, Tillman and Guevara expressly joined the "Defendants' Supplement to Defendants' First Amended Plea to the Jurisdiction," in which "Defendants[, defined to include Tillman and Guevara,] reassert[ed] and incorporate[d] the arguments already on file in th[e] case."  The "Defendants' First Amended Plea to the Jurisdiction" included the jurisdictional arguments that the other Appellees had previously raised in relation to the Eight Claims, in addition to challenging jurisdiction over the newly pleaded claims.  By expressly joining the supplement and "reassert[ing] and incorporat[ing]" the

15

arguments already on file, Tillman and Guevara challenged jurisdiction over the Eight Claims. Thus, the trial court did not err by ruling on the claims against Tillman and Guevara in deciding the plea to the jurisdiction. *See* Tex. R. Civ. P. 58 ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion, so long as the pleading containing such statements has not been superseded by an amendment as provided by Rule 65."). We overrule Leonard's eleventh issue.

## C. Propriety of dismissal of claims

Throughout his first through tenth issues, Leonard challenges the trial court's dismissal of all of his pleaded claims against all Appellees.

### 1. Sovereign immunity and our standard of review

Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the State has been sued unless the State consents to the suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Political subdivisions of the State, including cities, are entitled to such immunity—referred to as "governmental immunity"—unless it has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

An individual employee of a governmental entity also may be entitled to governmental immunity if he is sued in his official capacity. *Walker v. Hartman*, No. 09-19-00061-CV, 2020 WL 1465973, at *3 (Tex. App.—Beaumont Mar. 26, 2020,

16

no pet.) (mem. op.); *Nueces County v. Ferguson*, 97 S.W.3d 205, 214 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). However, even if a governmental entity's immunity is not waived, a governmental official can nevertheless be subject to suit in his or her official capacity under the ultra vires exception. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370, 372–73 (Tex. 2009) (noting that although governmental entity itself retains immunity from an ultra vires suit, "for all practical purposes," such a suit is against the entity). To state a claim under this exception, a plaintiff must allege that the named official or governmental employee acted without legal authority or failed to perform a ministerial act. *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). The standard for an ultra vires act is whether it was done without legal authority, not whether it was correct. *Hall v. McRaven*, 508 S.W.3d 232, 243 (Tex. 2017). Therefore, it is not an ultra vires act for an official to make an erroneous decision within the authority granted. *Id.* at 242.

The assertion of governmental immunity and the applicability of the ultra vires exception are matters properly raised in a plea to the jurisdiction. *City of Fort Worth v. Posey*, 593 S.W.3d 924, 927 (Tex. App.—Fort Worth 2020, no pet.). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be utilized to challenge whether a plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case or to challenge the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*,

372 S.W.3d 629, 635 (Tex. 2012). Whether a trial court has subject matter jurisdiction, whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, and whether undisputed evidence of jurisdictional facts establishes a trial court's subject matter jurisdiction are questions of law that we review de novo. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied) (citing *Miranda*, 133 S.W.3d at 226).

When a plea to the jurisdiction challenges the pleadings—as was done here for the majority of Leonard's claims[11]—we determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Tex. Dep't of*

---

[11]We presume for purposes of accurately representing the record that Appellees challenged the existence of jurisdictional facts to support Leonard's claim based on Texas Government Code Section 614.023(a)–(b) by attaching the March 18, 2019 notice of administrative leave and March 18, 2019 complaint to their first amended plea to the jurisdiction and by arguing, "Because [Leonard] was given sufficient notice under the statute, he has failed to plead a cause of action under § 614.023." *See Flores v. Tex. Dep't of Crim. Just.*, 634 S.W.3d 440, 450 (Tex. App.—El Paso 2021, no pet.) (citing *Miranda*, 133 S.W.3d at 226–27, for the proposition that a plea to the jurisdiction "can attack both the facts as pleaded as well as the existence of jurisdictional facts by attaching evidence to the plea"). However, on appeal, Appellees challenge only whether Leonard sufficiently pleaded claims that would waive Appellees' immunity from suit: "Because [Leonard] failed to plead a valid cause of action, he failed to invoke a waiver of immunity; therefore, Appellees are immune as a matter of law, and the trial court lacked jurisdiction to hear the case." Although pleadings are not evidence, *see, e.g.*, *Osman v. City of Fort Worth*, No. 02-21-00117-CV, 2022 WL 187984, at *10 n.16 (Tex. App.—Fort Worth Jan. 20, 2022, pet. denied) (mem. op.), because Leonard incorporated many of the facts included in the First Affidavit and Second Affidavit into his live petition and cited both affidavits in that petition and—without objection by Appellees—in his briefing on appeal, we will occasionally reference them in this memorandum opinion when discussing whether he pleaded a claim sufficient to waive Appellees' immunity from suit.

18

*Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (citing *Miranda*, 133 S.W.3d at 226). In making that determination, we liberally construe the pleadings in the plaintiff's favor, taking all factual assertions as true, and looking to the plaintiff's intent. *Id.* (citing *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)). Even under that liberal construction, the plaintiff bears the burden of demonstrating, through the facts alleged in his live pleading, that immunity from suit has been waived. *Doe v. City of Fort Worth*, 646 S.W.3d 889, 897 (Tex. App.—Fort Worth 2022, no pet.). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27; *City of Westworth Vill.*, 558 S.W.3d at 239. If, however, the pleadings are incurably defective—in other words, the allegations affirmatively negate the trial court's jurisdiction—then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 227.

To the extent a plea to the jurisdiction challenges the very existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties "when necessary to resolve the jurisdictional issues raised," even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Rangel*, 595 S.W.3d at 205 (quoting *Miranda*, 133 S.W.3d at 227). "For a plea that challenges

19

the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction." *Id.*; *Miranda*, 133 S.W.3d at 221, 228.

We address the question of whether the trial court has jurisdiction on a claim-by-claim basis. *Tex. Woman's Univ. v. Rodriguez*, No. 02-22-00278-CV, 2022 WL 17687433, at *8 (Tex. App.—Fort Worth Dec. 15, 2022, no pet.) (mem. op.). Thus, we will analyze each of the claims that the trial court dismissed for lack of subject matter jurisdiction, starting with the Eight Claims. In addition, because Leonard alleged both a waiver of sovereign immunity and the applicability of the ultra vires exception as to each of the Eight Claims, where he has stated a facially valid claim, we will review both theories. We will address his complaints against the Individual Defendants in their individual capacities last.

### 2. Eight Claims

#### a. Wrongful termination for civil-service-system support and Association affiliation

Three of Leonard's articulated causes of action—wrongful termination generally, violation of his right to free speech, and violation of his right to freely assemble—constitute the same complaint: that the City and the Individual Defendants wrongfully terminated his employment "in retaliation for [his] exercising his free speech right and/or his right to freely associate and engage in political

20

activity." Specifically, Leonard asserted that Appellees infringed on his free speech and assembly rights by punishing him for his involvement with the Association and the Association's attempt to obtain civil-service protection for the City's police-department employees.

### i. Common law and statutory wrongful termination

Texas law generally permits both employers and employees to terminate the employment relationship "at any time for any reason" unless a contract provides otherwise.[12] *See Hillman v. Nueces County*, 579 S.W.3d 354, 358–59 (Tex. 2019); *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 586 (Tex. App.—Fort Worth 2005, no pet.). Although the Texas Supreme Court has recognized a "narrow exception" to the at-will employment doctrine that prohibits employers from terminating employment "for the sole reason that the employee refused to perform an illegal act," *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985), the Texas Legislature has not waived immunity for such a claim, and Leonard has not made one. *See Hillman*, 579 S.W.3d at 358–59. Nor has he pleaded the applicability of any statute that waives immunity for specific types of employment suits. *See, e.g.*, Tex. Gov't Code Ann. §§ 554.003, 554.0035 (waiving immunity to the extent of liability for Whistleblower Act violation); Tex. Lab. Code Ann. §§ 21.051, 21.254 (waiving immunity for civil action based on unlawful

---

[12]Here, Leonard has neither identified any written employment contract with the City, nor has he argued that his employment with the City was anything other than "at-will."

discriminatory termination), §§ 451.001–.003 (waiving immunity for suit based on discharge for filing, prosecuting, or testifying in workers' compensation claim). Thus, to the extent Leonard's petition can be read as pleading a common law or statutory wrongful-termination claim unrelated to any alleged violation of his constitutional rights, it is not a facially valid claim—against either the City or the City officials—that would waive immunity from suit. Moreover, Leonard expressly denies that his fourth amended petition includes such a claim.[13] Accordingly, we hold that Leonard did not plead a facially valid common law or statutory claim for wrongful termination.

### ii. Wrongful termination in violation of Texas Constitution

Even though Leonard failed to plead a facially valid common law or statutory wrongful-termination claim, he attempted to plead a wrongful-termination claim based on the Texas Constitution. The Texas Constitution provides a narrow waiver of immunity from suits for equitable relief sought for a claim of wrongful termination based on a violation of the right to free speech and the right to assemble. *See Arlington Pro. Firefighters, Int'l Ass'n of Firefighters, AFL-CIO, Loc. 1329 v. City of Arlington*, No. 02-19-00156-CV, 2021 WL 4205012, at *21 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op.); *Caleb v. Carranza*, 518 S.W.3d 537, 544 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Wichita Falls State Hosp.*, 106 S.W.3d at 695 ("In Texas, the

---

[13]Thus, we need not address either party's exhaustion-of-remedies arguments applicable solely to statutory wrongful-termination claims and relating to Leonard's fourth and fifth issues. *See* Tex. R. App. P. 47.1.

22

people's will is expressed in the Constitution and laws of the State.  Consequently, to waive immunity, consent to suit must ordinarily be found in a constitutional provision or legislative enactment." (citations omitted)).  Therefore, although a plaintiff asserting a private cause of action for violation of his constitutional free-speech and assembly rights cannot recover monetary damages, he can sue for the reinstatement of employment without back pay and benefits.  *Arlington Pro. Firefighters*, 2021 WL 4205012, at *21 (citing *Webb County v. Romo*, 613 S.W.3d 633, 636–67 (Tex. App.—San Antonio 2020, no pet.)); *City of Fort Worth v. Jacobs*, 382 S.W.3d 597, 599 (Tex. App.—Fort Worth 2012, pet. dism'd) (relying on *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex. 1995)).  But such claims must be facially valid to waive immunity from suit.  *Klumb v. Hous. Mun. Emp. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015).  Leonard argues that he pleaded a facially valid claim that Appellees wrongfully terminated his employment because he exercised his rights to free speech and assembly.

To prevail on a constitutional retaliation claim involving the right to free speech or the right to freely assemble,[14] a plaintiff must establish that (1) he suffered

---

[14]Both Leonard and Appellees group the analysis of his claim of the denial of his right to free speech with the analysis of his claim of the denial of his right to freely assemble, and we will do the same.  Because Leonard's assembly claim is based on the Association's voicing of morale concerns and active, vocal support of civil service at the police department, we will refer primarily to speech-based cases.  *Cf. In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375 (Tex. 1998) (orig. proceeding) ("Freedom of association for the purpose of *advancing ideas* and airing grievances is a fundamental liberty guaranteed by the First Amendment." (emphasis added)); *Zaatari*, 615 S.W.3d at 195 (noting that Texas has never limited the right to assemble to

an adverse employment decision; (2) his exercise of the right to free speech or assembly involved a matter of public concern; (3) his interest in exercising that right outweighed the employer's interest in promoting efficiency; and (4) his exercise of that right motivated the adverse employment decision. *Caleb*, 518 S.W.3d at 544 (citing *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001), and applying First Amendment free-speech retaliation analysis to claim under Texas Constitution); *see also Patel v. Trevino*, No. 01-20-00445-CV, 2022 WL 3720135, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.) (also applying First Amendment free-speech retaliation analysis to claim under Texas Constitution); *Arlington Pro. Firefighters*, 2021 WL 4205012, at *6 (same). A public employee must also establish that he spoke as a private citizen, rather than as an employee pursuant to his official duties.[15] *Caleb*, 518 S.W.3d at 544.

---

gatherings for which the sole purpose is to petition the government for the redress of grievances).

[15]"When 'public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Caleb*, 518 S.W.3d at 544 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006)). But "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* (quoting *Lane v. Franks*, 573 U.S. 228, 240, 134 S. Ct. 2369, 2379 (2014)). Therefore, when determining if the plaintiff was speaking as an employee or individual, the court must decide "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* (quoting *Lane*, 573 U.S. at 240, 134 S. Ct. at 2379). Appellees do not dispute that Leonard was acting as a private citizen while engaging in the allegedly protected activity.

"Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 1216 (2011) (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983)); *see also King v. Paxton*, 576 S.W.3d 881, 902 (Tex. App.—Austin 2019, pet. denied). Whether speech or an activity is protected is a question of law. *Connick*, 461 U.S. at 148 n.7, 103 S. Ct. at 1690 n.7.

In all of his petitions, including the live fourth amended petition, Leonard contended that his protected speech involved advocating for the City to adopt civil-service rules for police officers—via the purchasing and placing of signs and door hangers—and that the City and Individual Defendants were opposed to the implementation of such a system. He also contended that he suffered adverse employment actions because of his support of the civil-service system, including an alleged demotion and termination of his employment. He further pleaded that he was retaliated against for his participation in the Association and its efforts to bring morale and leadership problems to the attention of police-department leadership.

Leonard's latter allegation—that he was retaliated against as an Association member for the Association's voicing of morale and leadership issues at the police department—is not entitled to protection. Although speech about police misconduct involves a matter of public concern, *see Markos v. City of Atlanta*, 364 F.3d 567, 570 (5th Cir. 2004), even that speech can be considered private in its larger context when

25

its purpose is not to root out corruption but to address an employee's working conditions or to ameliorate the employee's reputation, *see Teague v. City of Flower Mound*, 179 F.3d 377, 381, 383 (5th Cir. 1999); *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993). *Patel*, 2022 WL 3720135, at *7. Leonard did not allege that the Association raised any concerns of leadership misconduct; he simply pleaded that the Association brought morale and leadership concerns to the police-department leadership's attention. Thus, he did not plead a facially valid constitutional-retaliation claim based on this aspect of his involvement with the Association. *See, e.g.*, *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 734, 738–39 (5th Cir. 2015) (determining that Facebook post critical of police chief's leadership decision did not involve a matter of public concern); *see also Fitzpatrick v. City of Frankfort*, No. 06-38, 2007 WL 2900454, at *6 (E.D. Ky. Oct. 3, 2007) ("In particular, where the employee's speech relates only to internal matters, personnel decisions, or matters of purely personal interest to the employee/speaker, then the speech cannot be characterized as relating to a matter of public concern."), *aff'd*, 305 F. App'x 258, 265 (6th Cir. 2008).

But Leonard's allegations regarding the Association's effort to obtain civil-service approval are different. Leonard specifically alleged that his and the Association's speech and activities about "an election over civil[-]service protection for police employees of [the] City" were of "significant public concern." He described the Association's efforts as political activity. As pleaded, Leonard's activity in furtherance of obtaining civil service at the police department involved a matter of

26

political concern to the community. *See Vojvodich v. Lopez,* 48 F.3d 879, 885 (5th Cir. 1995) ("In the present case, there can be no question that the claimed activity, associating with political organizations and campaigning for a political candidate, related to a matter of public concern."); *Fitzpatrick,* 2007 WL 2900454, at \*8 (describing speech advocating civil-service implementation as a "politically charged employment issue[] likely to be of immediate concern to" fire department as employer and firefighter as employee); *cf. Blackwell v. St. Charles Par.,* No. 05-2105, 2009 WL 2408951, at \*1–2, \*8–9 (E.D. La. Aug. 4, 2009) (holding that fired employees' support of political campaign "addressed a matter of public concern" and that summary judgment fact issue was raised as to whether employees' pursuit of civil-service status was solely for personal gain or was meant to address potential racial discrimination, making their support about an issue of "serious public concern").

Appellees contend that Leonard failed to sufficiently plead that his interest in exercising his rights to free speech and assembly outweighed the City's interest in promoting efficiency. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,* 391 U.S. 563, 568–73, 88 S. Ct. 1731, 1734–37 (1968) (holding that when governmental employee contends that employer violated the employee's First Amendment rights, the court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" and conducting balancing test); *see also Engquist v. Or. Dep't of Agric.,*

27

553 U.S. 591, 600, 128 S. Ct. 2146, 2152 (2008) (noting that, in federal constitutional context, "although government employees do not lose their constitutional rights when they accept their positions, those rights must be balanced against the realities of the employment context" and that "in striking the appropriate balance, [the courts must] consider whether the asserted employee right implicates the basic concerns of the relevant constitutional provision, or whether the claimed right can more readily give way to the requirements of the government as employer"). But it is the governmental entity's burden to show that a particular discharge was justified in light of the nature of the expression itself and the entity's interest in effectively and efficiently fulfilling its public responsibility. *See Connick*, 461 U.S. at 150, 103 S. Ct. at 1691–92; *Fitzpatrick*, 2007 WL 2900454, at *12 (noting that governmental employer has burden to show adequate justification for terminating employment based on protected speech); *see also Hanson v. Cameron County*, No. B-09-202, 2010 WL 148723, at *6 (S.D. Tex. Jan. 14, 2010) (noting that application of *Pickering* balancing test was premature in review of pleadings' sufficiency); *Blackwell*, 2009 WL 2408951, at *9 (noting, in denying summary judgment, that governmental employer had not argued that employees' interest in protected speech was outweighed by employer's interest in promoting efficiency). Appellees have not argued or pleaded that Leonard's employment was terminated because of his support for civil service and his Association involvement, nor have they argued or pleaded that the City's interest in efficiency and effectiveness outweighed Leonard's right to engage in that expression.

28

In fact, Appellees appear to dispute what Leonard clearly pleaded for this cause of action: that the motivating factor for the termination of his employment was his support for the civil-service system.[16]

Accordingly, we conclude under the appropriate standard of review that Leonard pleaded facially valid claims that his employment was terminated in violation of his rights of free speech and assembly because of his support for civil-service implementation at the police department, both as a private citizen and as an Association member. Thus, we sustain his first issue in part as to these claims.

### b. Equal-protection claim

Related to his claims for wrongful termination, Leonard asserted that he was denied equal protection under the Texas Constitution because of his Association membership and activity, including support of a civil-service system. *See* Tex. Const. art. I, § 3. To establish a viable equal-protection claim under the Texas Constitution, a plaintiff must show that he was "treated differently from others similarly situated." *Klumb*, 458 S.W.3d at 13.

---

[16]Appellees contend that Leonard failed to plead sufficient facts to support this allegation because it "relies on requiring the trial court to find that reasonable jurors could believe that two counties, a Texas Ranger, and a school district's police chief were in cahoots with Appellees on a crusade to ruin" Leonard and because the trial court "could have discredited these alleged jurisdictional facts." But this argument is not based on the applicable standard of review at the pleading stage. *See Rangel*, 595 S.W.3d at 205 (reiterating established standard of review that requires liberal construction of pleadings, in which we consider all factual assertions true).

Appellees argued in the trial court that Leonard's claim for the denial of equal protection under the law was insufficient to waive immunity, noting that his allegation that "others similarly situated were not also deprived of their rights" is conclusory and that he offered no support for that statement.

In his Second Affidavit, Leonard specifically alleged that he had been treated differently from a former City police officer who had been arrested, charged with, and convicted of driving while intoxicated. According to Leonard, the City submitted that officer's TCOLE F-5 form as "Honorably Discharged F-5." Thus, as to his TCOLE F-5 form, Leonard claimed he was treated differently from a similarly situated former employee. But for Leonard, the correction of the TCOLE form is an administrative process, for which a remedy is provided under the Texas Occupations Code.[17] *See* Act of May 25, 2005, 79th Leg., R.S., ch. 1298, § 3, 2005 Tex. Gen. Laws 4092, 4093 (enacting Tex. Occ. Code Ann. § 1701.4525, last amended 2013); *see also* Act of May 28, 2023, 88th Leg., R.S., ch. 1104, S.B. 1445, §§ 22(3), 26 (repealing Tex. Occ. Code Ann. § 1701.4525 for separation of a license holder occurring on or after March 1, 2024 but continuing prior law for employment separations occurring before that

---

[17]In his briefing, Leonard alluded to a pending SOAH appeal of the TCOLE F-5 designation. He did not provide the trial court, and has not provided this court, with statutory authority compelling a specific TCOLE F-5 form designation. *Cf. Van Boven v. Freshour*, 659 S.W.3d 396, 403–05 (Tex. 2022) (holding that Texas Medical Board officers, in their official capacities, had a ministerial duty to file documentation verifying that initial temporary report of sanctions against physician was void when Board later determined that the allegations in the temporary report had not been proved).

30

date); *Stacks v. Burnet Cnty. Sheriff's Off.*, 565 S.W.3d 860, 862–63 (Tex. App.—Austin Dec. 12, 2018, no pet.) (involving administrative appeal from SOAH contested-case hearing to correct TCOLE F-5 form designation). Thus, his TCOLE F-5 form designation cannot be a valid basis for an equal-protection claim.

Leonard pleaded no other facts indicating that he was treated differently from any similarly situated employee because of his support of the civil-service system and Association involvement. Indeed, with regard to his alleged free-speech and free-assembly activity, he claimed that other Association members and police-department employees who supported civil-service-system implementation were retaliated against in some fashion. Although he alleged that he was singled out to be fired because he "was the primary participant in the effort to obtain approval for civil service," such a theory is not a proper basis for a facially valid equal-protection claim. *See Engquist*, 553 U.S. at 605, 128 S. Ct. at 2155 (rejecting "class of one" equal-protection theory's applicability in employment-termination cases when "government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner"); *see also Klumb*, 458 S.W.3d at 13 n.8 (noting that "[f]ederal equal-protection cases are instructive with regard to equal-protection challenges under the Texas Constitution"). Leonard pleaded no facts showing that he was treated differently from other similarly situated police-department employees; thus, we conclude that he failed to plead a facially valid equal-protection claim. *See Tex. Dep't of Health v. Rocha*, 102 S.W.3d 348, 352, 355 (Tex. App.—Corpus Christi–

31

Edinburg 2003, no pet.) (concluding that ultra vires equal-protection claim, based on failure to terminate employment of other employees accused of sexual harassment, was not facially valid).

### c. Due-course-of-law claim

Leonard asserted that Appellees denied his rights without due course of law by terminating his employment because of his exercise of his free-speech and assembly rights—without notice, hearing, or the right of appeal. Appellees argued in the trial court that this claim is invalid and therefore insufficient to waive immunity.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges[,] or immunities . . . except by the due course of the law of the land." Tex. Const. art. I, § 19. Before due-process rights attach, a plaintiff must have a property or liberty interest that is entitled to constitutional protection. *Klumb*, 458 S.W.3d at 15. An at-will employment relationship does not create a property interest. *City of Fort Worth v. Fitzgerald*, No. 05-22-00327-CV, 2023 WL 1813525, at *7 (Tex. App.—Dallas Feb. 8, 2023, no pet.) (mem. op.). However, "[a] public employer may unconstitutionally deprive its employee of a liberty interest if it discharges him under stigmatizing circumstances without giving the employee an opportunity to clear his name." *Caleb*, 518 S.W.3d at 545 (quoting *Arrington v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992)). To raise a facially valid name-clearing-hearing claim, a plaintiff must allege facts showing that (1) he was a public employee, (2) stigmatizing charges were made against him in

connection with his discharge, (3) the charges were false, (4) the charges were made public, (5) he requested a name-clearing hearing, and (6) the hearing was denied. *Id.* (citing *Arrington*, 970 F.2d at 1447). The public charges that were made must be so stigmatizing "that they create a 'badge of infamy' [that] destroys the [plaintiff's] ability to take advantage of other employment opportunities." *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir. 1988); *Casper v. Tex. Woman's Univ.*, No. 02-22-00345-CV, 2023 WL 5617129, at *8 (Tex. App.—Fort Worth Aug. 31, 2023, pet. filed) (mem. op.).

Appellees argue on appeal that Leonard failed to plead facts showing a protected liberty interest because he did not allege that stigmatizing charges were made against him in connection with his discharge. In his first amended petition, Leonard expressly complained of the General Discharge rating put on his TCOLE F-5 form and of the criminal investigation that was pending when he was discharged. However, he failed to plead facts establishing that either of these events was so stigmatizing that his reputation and future employment opportunities were damaged. *See Evans*, 861 F.2d at 851; *see also Caleb*, 518 S.W.3d at 545. Thus, he did not plead a valid due-course-of-law violation claim.

### d. Denial of the constitutional right to petition

Leonard based his claim for the denial of his right to petition on Appellees' alleged refusal to hear his grievance pertaining to the termination. Specifically, although he acknowledged that he was able to file an appeal, which Cutrone denied,

Leonard contended that he was constitutionally entitled to a "hearing" with the City's final authority before his employment could be terminated and that he did not receive one.

The Texas Constitution provides that "citizens shall have the right . . . [to] apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address[,] or remonstrance." Tex. Const. art. I, § 27. The powers of government have an obligation to "stop, look[,] and listen" and must "consider the petition, address[,] or remonstrance," but there is "no requirement that those trusted with the powers of government must negotiate or even respond to complaints filed by those being governed." *Pro. Ass'n of Coll. Educators v. El Paso Cnty. Cmty. Dist.*, 678 S.W.2d 94, 96 (Tex. App.—El Paso 1984, writ ref'd n.r.e.); *see Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 704 (Tex. App.—Corpus Christi–Edinburg 1986, no writ) (citing *Pro. Ass'n of Coll. Educators* for the proposition that there is no requirement that the powers of government must negotiate or respond to complaints filed by those being governed and noting that that holding was "a sound one"). Simply allowing the opportunity to approach the entity with a grievance is sufficient. *See Corpus Christi Indep. Sch. Dist.*, 709 S.W.2d at 703–05 (holding that school board's open forum part of meeting provided sufficient opportunity to address government under Article I, Section 27).

In both his original petition and his live petition, Leonard alleged that he had "articulated his wrongful[-]termination grievance" at the City's Board of

34

Commissioners[18] meeting on February 15, 2021, but that the City's Board of Commissioners "could not *consider* the matter because it was not on the agenda for the meeting." [Emphasis added.] According to Leonard, his appearance and articulation of his complaint was not meaningful because TOMA barred the Board of Commissioners from actually considering his complaint. But TOMA expressly allows a member of the public to make an inquiry about a non-agenda item during a Board of Commissioners meeting. Section 551.042(a) provides as follows,

> If, at a meeting of a governmental body, a member of the public or of the governmental body inquires about a subject for which notice has not been given as required by this subchapter, the notice provisions of this subchapter do not apply to:
>
> (1) a statement of specific factual information given in response to the inquiry; or
>
> (2) a recitation of existing policy in response to the inquiry.

Tex. Gov't Code Ann. § 551.042(a). While Section 551.042(b) states that "[a]ny *deliberation of or decision about* the subject of the inquiry shall be limited to a proposal to place the subject on the agenda for a subsequent meeting," that subsection nevertheless allows the Board of Commissioners the opportunity to deliberate on the complaint at a later date provided the item is properly placed on a meeting agenda. *Id.* § 551.042(b) (emphasis added). It is of no moment here that the Board of

---

[18]In his original petition, Leonard referred to the City's governing entity as the City Council; in his live pleading, he used "City Council" and "Board of Commissioners" interchangeably. Because the record indicates that the correct name of the entity is the Board of Commissioners, we will use that term.

Commissioners declined to propose to place, or place, the matter on a subsequent agenda for "deliberation of or decision about" Leonard's grievance because Article I, Section 27 does not require the Board of Commissioners to hold a hearing or to take action on the complaint. *See Pro. Ass'n of Coll. Educators*, 678 S.W.2d at 96. And Leonard did not allege that any constitutional or statutory provision requires the Board of Commissioners to place his complaint on a meeting agenda. Thus, Leonard failed to plead a facially valid claim for the denial of his right to petition.

### e. Violation of Section 617.005 of the Government Code

Leonard argues that Appellees violated Section 617.005 of the Government Code by depriving him of "his statutory right to have his grievance heard by a person in a position of authority." Chapter 617 of the Government Code contains a provision prohibiting State officials from engaging in collective bargaining with public employees. Tex. Gov't Code Ann. § 617.002(a). But Section 617.005 provides that the other parts of Chapter 617 "do[] not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike." *Id.* § 617.005. The Texas Supreme Court has characterized Section 617.005 as "granting public-sector unionized employees the limited right 'to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike.'" *City of*

36

*Round Rock v. Rodriguez*, 399 S.W.3d 130, 135 (Tex. 2013) (describing and quoting Section 617.005 in parenthetical).

Although granting unionized public employees this limited right, the Texas Legislature has not authorized a private cause of action for the violation of Section 617.005. *See Johnson v. Waxahachie Indep. Sch. Dist.*, 322 S.W.3d 396, 399–400 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that Section 617.005 neither expressly nor impliedly confers a cause of action). Moreover, "nothing in [Chapter 617] clearly and unambiguously waives . . . immunity." *Burleson v. Collin Cnty. Cmty. Coll. Dist.*, No. 05-21-00088-CV, 2022 WL 17817965, at *7 (Tex. App.—Dallas Dec. 20, 2022, no pet.) (mem. op.) (quoting *City of Caldwell v. Lilly*, No. 10-12-00102-CV, 2012 WL 3242742, at *5 (Tex. App.—Waco Aug. 9, 2012, no pet.) (mem. op.)). Accordingly, the trial court did not err by dismissing Leonard's claim against the City for any alleged violation of Section 617.005.

To the extent that Leonard claimed that City officials acted ultra vires by not complying with Section 617.005, his complaint is not that he was not allowed to present a grievance; as he pleaded, he "appealed his termination to" Cutrone, who eventually denied it.[19] Leonard's complaint is that the grievance he was allowed to file was not sufficient because no hearing was held and because no one in a position of

---

[19]According to Leonard's live pleading, Cutrone "issued a written decision . . . but . . . did not uphold []or overturn" the appeal; instead, Cutrone allegedly told Leonard's counsel in correspondence, "[Y]our client's appeal of his termination is denied."

authority seriously considered his appeal. Leonard cites no authority, and we have not found any, requiring a full-blown hearing under Section 617.005. *See Arlington Pro. Firefighters*, 2021 WL 4205012, at *28; *see also Player v. Dallas County*, No. 3:12-CV-3947-N, 2014 WL 12834581, at *4 (N.D. Tex. Feb. 19, 2014) (order); *Burleson*, 2022 WL 17817965, at *8. Accordingly, we hold that Leonard failed to allege an ultra vires claim for violation of Section 617.005. We overrule Leonard's sixth issue challenging the trial court's dismissal of his Section 617.005-based claims.

### f. Failure to allow Leonard to invoke City appeal process

Included in Leonard's complaints about the violation of his right to petition and violation of Government Code Section 617.005 is a complaint that the City refused to allow him to utilize the "formal appeal procedure" alluded to in City Resolution Number 643.

Leonard attached a copy of Resolution Number 643 to his fourth amended petition. The June 18, 2018 Resolution adopts a revised City Personnel Policy Handbook and directs the City Clerk to ensure that it is distributed to all City employees. According to Leonard's pleading, the Personnel Policy Handbook itself provides that "*[t]he formal appeal procedure is available to any regular classified employee who disagrees with the decision to terminate the employee.*" [Emphasis added.] Leonard sought to invoke this "formal appeal procedure," but he did not delineate what it entails, how his appeal to Cutrone fell short of its requirements, or to whom such an appeal would be directed. He merely argued that the Individual Defendants

38

refused to allow him to invoke the procedure; again, his primary complaint regarding Resolution Number 643 appears to be that he is entitled to a hearing "before someone 'in a position of authority'" but was not provided one.

We conclude that Leonard did not allege facts sufficient to state a facially valid claim based on Resolution Number 643. *See Tex. Tech Univ. Health Scis. Ctr. v. Enoh*, 545 S.W.3d 607, 625 (Tex. App.—El Paso 2016, no pet.) (affirming dismissal of claim for failure to follow appeal process because "[n]othing in the pleading explains what ministerial duty these specific doctors failed to discharge in regard to the appeal process").

### g. Civil conspiracy

Leonard alleged that Appellees "engaged in a civil conspiracy to deprive [him] of the opportunity to exercise his constitutional and/or statutory rights," or alternatively, that they, along with others, "acted in concert to punish and/or retaliate against [him] for his exercise of constitutional and/or statutory rights."[20]

---

[20]In his live petition, Leonard used phrases common to Section 1983 claims: that the City denied his rights pursuant to an "official policy" of the City's "final policy-maker." *See, e.g.*, *Harris County v. Coats*, 607 S.W.3d 359, 373 (Tex. App.— Houston [14th Dist.] 2020, no pet.). However, Leonard also pleaded only alleged violations of the Texas Constitution, did not identify a Section 1983 claim, and in his briefing, does not argue that he raised one. *See Franz v. Rodriguez*, No. 13-22-00413-CV, 2023 WL 5108966, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 10, 2023, no pet.) (mem. op.) ("A claim under 42 U.S.C. § 1983 has two foundational elements: a violation of the Constitution or of federal law, and that the violation was committed by someone acting under color of state law." (quoting *Webb v. Township of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019))); *cf. Williams v. Stevens*, No. 05-22-00440-CV, 2023 WL 5621835, at *6 (Tex. App.—Dallas Aug. 31, 2023, no pet.) (mem. op.)

Civil conspiracy is not an independent tort. *Jaramillo v. City of Texas City*, No. 01-20-00654-CV, 2022 WL 363271, at *4 (Tex. App.—Houston [1st Dist.] Feb. 8, 2022, no pet.) (mem. op.); *Shopoff Advisors, LP v. Atrium Circle, GP*, 596 S.W.3d 894, 908 (Tex. App.—San Antonio 2019, no pet.) (op. on reh'g). Instead, it is a theory of vicarious liability that depends on proof of an underlying intentional tort. *Jaramillo*, 2022 WL 363271, at *4; *Shopoff Advisors, LP*, 596 S.W.3d at 908; *see also Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) ("[A] civil conspiracy claim is connected to the underlying tort and survives or fails alongside it."); *Perales v. Newman*, No. 02-23-00095-CV, 2023 WL 5615893, at *21 (Tex. App.—Fort Worth Aug. 31, 2023, pet. denied) (mem. op.) (noting in TCPA suit that civil conspiracy requires an underlying intentional tort that causes damages). The City's immunity is not waived for intentional torts; thus, Leonard cannot plead a facially valid claim for civil conspiracy against the City. *See City of Houston v. Hous. Metro. Sec.*, No. 01-22-00532-CV, 2023 WL 2602520, at *5 (Tex. App.—Houston [1st Dist.] Mar. 23, 2023, no pet.) (mem. op.). Moreover, to the extent that Leonard attempted to plead civil conspiracy against the Individual Defendants in their official capacities,

(holding that trial court did not err by granting Texas Citizens Participation Act (TCPA) dismissal of civil conspiracy claim based on alleged Section 1983 violation). *But cf. Vacca v. Farrington*, 85 S.W.3d 438, 442 (Tex. App.—Texarkana 2002, no pet.) (holding that inmate raised facially valid Section 1983 claim for violation of First, Fifth, Eighth, and Fourteenth Amendment rights). "Isolated unconstitutional actions by local government employees will almost never trigger employer liability because local government employers are not vicariously liable under section 1983 for their employees' unconstitutional or illegal acts." *Coats*, 607 S.W.3d at 373.

40

such a claim would be barred by the Texas Tort Claims Act's election of remedies provision. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *Garza v. Harrison*, 574 S.W.3d 389, 393–94 (Tex. 2019); *Stinson v. Fontenot*, 435 S.W.3d 793, 793 (Tex. 2014); *Walker*, 2020 WL 1465973, at *7.[21] We therefore overrule Leonard's eighth issue.

Here, Leonard did not plead a valid tort claim against any of the Appellees. Indeed, in his brief, Leonard acknowledges that he "makes no tort claims [and] he seeks no tort damages." Because Leonard pleaded no valid tort claim and because a civil conspiracy claim relies on the existence of an intentional tort for which the City's immunity has not been waived and for which his recovery against the Individual Defendants in their official capacities is barred, we conclude that Leonard failed to plead a facially valid civil conspiracy claim.

### h. Disposition of Eight Claims

With regard to those of the Eight Claims for which we conclude Leonard failed to state a facially valid claim, he contends that he should be given an opportunity to replead, but Appellees argue that the trial court already gave him a sufficient opportunity to replead.

As to Leonard's claims based on his equal-protection and due-process rights and his City-appeal-procedure complaint, Appellees' opposing arguments in this court

---

[21]Appellees filed motions to dismiss under Section 101.106(f) as to each Individual Defendant.

and the trial court are of pleading sufficiency, not incurable defects; accordingly, Leonard should have been afforded an opportunity to amend his pleadings with respect to these claims prior to dismissal.[22]  *See Rodriguez*, 2022 WL 17687433, at \*13 ("[W]e conclude that the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction.  Therefore, [the plaintiff] should be afforded an opportunity to amend her pleadings.").

Appellees suggest that because Leonard was able to amend his pleadings numerous times, he has already been given an adequate opportunity to replead these claims.  We disagree.  Although the trial court gave Leonard the opportunity to replead when it dismissed these claims in ruling on the original plea to the jurisdiction—which covered all claims pleaded in the first amended petition—that opportunity was limited "to all remaining claims not dismissed," which did not include the Eight Claims.  At the initial hearing on the first amended plea to the jurisdiction—after Leonard had filed the third amended petition but before he filed the allowed fourth amended petition—the trial court expressly stated,

> I have no intentions of reworking through all of the dismissed cause[s] of action[], nor do I have any intention of either party spending their time, energy, or resources on addressing causes of action of which I've already dismissed.  So I will not entertain any cause of action for which I've already dismissed.

---

[22]We therefore sustain his third issue in part, solely as to these specific claims.

42

Thus, the trial court did not give Leonard an opportunity to cure any pleading deficiency with respect to any of the Eight Claims.

To the extent that Appellees suggest that Leonard had the opportunity to cure his pleadings before the trial court ruled on the original plea to the jurisdiction, we note that a similar argument was rejected in *Texas A & M University System v. Koseoglu*. 233 S.W.3d at 839–40. There, the Texas Supreme Court addressed the governmental entity's argument that "the plaintiff's opportunity to amend should come after the governmental entity files its plea to the jurisdiction, which puts the plaintiff on notice of alleged defects in his pleadings, but before the trial court takes any definitive action." *Id.* at 839. The Texas Supreme Court rejected that argument, noting that the governmental entity's "proposed rule would essentially allow governmental entities the unjust advantage of being not only a litigant, but also the judge of the plaintiff's pleadings." *Id.* at 839–40; *see also Prestonwood Ests. W. Homeowners Ass'n v. City of Arlington*, No. 02-21-00362-CV, 2022 WL 3097374, at *8 & n.10 (Tex. App.—Fort Worth Aug. 4, 2022, no pet.) (mem. op.) (citing *Koseoglu* for the proposition that "a plaintiff should be given a reasonable opportunity to replead after *a trial court* finds merit in a plea to the jurisdiction if the defects can be cured" (emphasis added)).

However, we conclude that Leonard is not entitled to replead any of his remaining properly dismissed claims. As to his general wrongful-termination claim that is not based on his constitutional-violation allegations, he cannot plead a facially valid common law claim, and he expressly disclaims pleading any statutory claim.

43

Likewise, we conclude that he cannot plead facially valid claims for violation of his right to petition and violation of Section 617.005; according to his own pleadings, he has already received all of the relief to which he is entitled under both the Texas Constitution and Section 617.005. Moreover, Section 617.005 does not establish a cause of action for which immunity is waived. And, finally, he cannot plead a valid civil conspiracy claim for which the City's immunity is waived or for which suit against the Individual Defendants in their official capacities is not barred. *See Jaramillo*, 2022 WL 363271, at *4; *Shopoff Advisors, LP*, 596 S.W.3d at 908; *cf. Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (noting that the opportunity to amend "is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction"). Thus, we conclude that the trial court properly dismissed these claims without any opportunity for repleading.

### i. Declaratory relief

To the extent that Leonard sought declaratory relief against the City for any of the rightfully dismissed claims that can be repleaded,[23] we will briefly address that part of his petition. Leonard sought relief pursuant to the Uniform Declaratory Judgments

---

[23] *See Tex. Educ. Agency v. Devereux Tex. League City*, No. 03-22-00172-CV, 2023 WL 3325932, at *2 (Tex. App.—Austin May 10, 2023, no pet.) (mem. op.) ("Sovereign immunity is not a bar for suits seeking declaratory . . . relief for violations of constitutional rights.").

44

Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011. The UDJA does not contain a general waiver of sovereign immunity; instead, it provides "only a limited waiver for challenges to the validity of an ordinance or statute." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). "UDJA claims requesting other types of declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying action." *Id.* Additionally, although "sovereign immunity does not prohibit suits brought to require state officials to comply with statutory or constitutional provisions," *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76 (Tex. 2015); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (citing *Heinrich*, 284 S.W.3d at 371–73), the UDJA does not waive a governmental entity's immunity for a claim that a governmental actor has violated the law, *City of Garland v. Jordan*, No. 05-21-00377-CV, 2022 WL 1498121, at *4 (Tex. App.—Dallas May 12, 2022, pet. denied) (mem. op.).

Leonard purported to seek "interpretation of [the] City's policies and practices," which he contends are the "functional equivalent of statutes." But "[t]he UDJA's limited waiver does not authorize suits regarding the validity of governmental actions, rules, or policies implemented under a statute." *See Austin Parents for Med. Choice v. Austin Indep. Sch. Dist.*, No. 03-21-00681-CV, 2023 WL 5109592, at *3 (Tex. App.—Austin Aug. 10, 2023, no pet.) (mem. op.) (citing *Hatchett v. W. Travis Cnty. Pub. Util. Agency*, 598 S.W.3d 744, 753–54 (Tex. App.—Austin 2020, pet. denied)); *Scribner*

45

*v. Treger*, No. 02-21-00277-CV, 2022 WL 714654, at \*15 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (mem. op.).

None of Leonard's claims that can be repleaded directly challenged the validity of a City ordinance or a Texas statute; instead, those claims sought affirmative declarations that the City and the Individual Defendants engaged in certain actions or declined to take required actions—violating his constitutional rights to free speech and assembly, to equal protection, and to due course of law and refusing to provide him a formal appeal according to Resolution 643. Accordingly, even if Leonard's pleadings could be construed as pleading facially valid claims for these causes of action, they did not allege sufficient facts to waive the City's immunity under the UDJA.

### 3. Remaining claims

#### a. Violation of TOMA

In his original petition, first amended petition, and second amended petition, Leonard purported to assert claims against the City, Cutrone, and Stahr for allegedly violating TOMA. Leonard did not include a TOMA claim in his third amended and fourth amended petitions. In his appellant's brief, Leonard acknowledges that he had dropped his TOMA claim. But in his reply brief, he argues that the trial court's dismissal of that claim, without giving him the opportunity to amend, was reversible error. We disagree. Here, the trial court did not dismiss Leonard's claim relating to the alleged violation of TOMA; rather, Leonard abandoned it by not including it in his

46

live petition. *See Seim v. Allstate Tex. Lloyds*, No. 02-16-00050-CV, 2019 WL 3493814, at *10 (Tex. App.—Fort Worth July 30, 2019, pet. denied) (mem. op. on reh'g) (en banc) (noting that plaintiffs' failure to include claims that had been raised in original petition in later-filed first and second amended petitions "operated to abandon" those claims).

### b. Violation of Section 614.023 of the Government Code

In his live petition, Leonard argued that the City violated Section 614.023 of the Government Code. Section 614.023 provides,

> (a) A copy of a signed complaint against a law enforcement officer of this state or a . . . peace officer appointed or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.
>
> (b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.
>
> (c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:
>
> > (1) the complaint is investigated; and
> >
> > (2) there is evidence to prove the allegation of misconduct.

Tex. Gov't Code Ann. § 614.023.

Leonard alleged that the City violated this section by (1) taking disciplinary action against him without first providing him a copy of a signed complaint and

(2) terminating his employment based on the subject matter of the complaint[24] without first ensuring the complaint was investigated and that evidence existed to prove the allegation of misconduct.

Section 614.023 does not change the nature of the at-will employment relationship or abrogate the right to discharge an employee at will. *Colorado County v. Staff*, 510 S.W.3d 435, 446 (Tex. 2017). Rather, Section 614.023 "provides a measure of procedural protection for law enforcement officers by protecting them from adverse employment action based on unsubstantiated accusations." *Lewis v. DiCamillo*, No. 01-19-00764-CV, 2021 WL 3775604, at *4 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (mem. op.); *see also Colorado County*, 510 S.W.3d at 446 ("Chapter 614 does not give an employee a right to continued employment, but it does require compliance with the statutory process before an employee may be permanently encumbered by a damaging discharge record.").

Nothing in Chapter 614 of the Government Code waives the City's immunity from suit. *See Burleson*, 2022 WL 17817965, at *7. And when the undisputed facts

---

[24]We note that this alleged motive for this cause of action is slightly different from the motive underlying Leonard's constitutional claim, in which he argued that he was fired for exercising his constitutional right to speak and assemble based on a matter of public concern. Here, Leonard alleged that he was fired based on the subject matter of the complaint, but in other parts of his petition, he argued that the complaint was a subterfuge for the real reason he was fired: his support for civil service at the police department. Because a party is allowed to plead in the alternative, *see* Tex. R. Civ. P. 48, this distinction is irrelevant to the validity of Leonard's pleaded claims.

show that Section 614.023 was complied with, an ultra vires action cannot be maintained under that section. *Lewis*, 2021 WL 3775604, at *6. Leonard contends, however, that Cutrone terminated his employment because of the subject matter of the pending criminal complaint without first complying with all of the preconditions of Section 614.023.

### i. Section 614.023(a)–(b)

In his fourth amended petition, Leonard alleged that on March 18, 2019, over a month before his employment was terminated, he was given a "Notice of Complaint in Accordance with Government Code 614.022,"[25] which Cutrone signed. Leonard attached the notice to his petition and referenced that attachment, labeling it Exhibit 4.[26] The notice describes the nature of the complaint—"you may have committed misconduct reflecting discredit on the City . . . and the City . . . Police Department when you allegedly assaulted a juvenile[] at a soccer game in December 2018"—and identifies Cutrone as the complainant. It also lists six areas of police department or City rules Leonard allegedly violated, and it is dated March 18, 2019. Because Leonard's own pleadings show compliance with subsections (a) and

---

[25]Section 614.022 provides that "[t]o be considered by the head of a state agency or by the head of a fire department or local law enforcement agency, the complaint must be . . . (1) in writing . . . and (2) signed by the person making the complaint." Tex. Gov't Code Ann. § 614.022.

[26]No documents are designated Exhibits 1 through 3.

(b) of Section 614.023, Leonard failed to allege a valid ultra vires claim based on an allegation that any of the Individual Defendants violated those subsections.[27]

### ii. Section 614.023(c)

Regarding Section 614.023(c), Leonard alleged that on March 18, 2019, Guevara told Leonard that unless he resigned, he would be investigated by the Wichita County Sheriff's Office pursuant to Government Code Section 614.023. According to Leonard, "From Guevara's express statements, it is clear that any purported investigation of alleged complaints against . . . Leonard would not be a fair, objective, [and] impartial investigation, as required by" Section 614.023.

Also on March 18, 2019, Stahr "issued a Memorandum titled 'Notice of Unpaid Administrative Leave and Confidentiality Order,'" which stated that "[a]n investigation [would] be conducted" and that Leonard would be interviewed. Leonard attached this notice to his petition and referenced that attachment in the petition, labeling it Exhibit 5.

---

[27]In fact, the requisite notice under Section 614.023 can be given contemporaneously with the termination and still comply with the statute. *Colorado County*, 510 S.W.3d at 439, 454. In his reply brief, Leonard states that Cutrone's complaint was a "document[] obtained in litigation, not a complaint provided 'under Section 614.023.'" Thus, it appears that his argument is that Cutrone's complaint did not comply with the legal requirements of the statute. However, we conclude that, based on the holding in *Colorado County*, it was sufficient. *See id.*

The fourth amended petition attachments further included a document labeled Exhibit 6,[28] but that document is not specifically referenced in the body of the pleading, as an attachment or otherwise. Dated April 24, 2019, it is addressed to Leonard from Cutrone, and the subject matter is listed as "Predetermination Notice/Findings of Investigation." In the document, Cutrone detailed the pending misdemeanor charge against Leonard, stated that an investigation was conducted, and described what that investigation entailed: (1) "a review by the Wichita County Sheriff's Office of the information provided to them";[29] (2) a review of emails from parents and observers of the soccer-game incident; and (3) Cutrone's own review "of the security footage from the school" and his impressions of what occurred. Cutrone also detailed how he believed Leonard had violated certain provisions of the City

---

[28]Therefore, unlike most of the rest of the attachments, Leonard did not purport to rely on it as part of his pleading.

[29]Deputy Wisch's report, attached to the Second Affidavit, detailed his "review [of] the administrative suspension of . . . Leonard." Deputy Wisch stated that he contacted the Texas Ranger who was investigating the criminal case but that he would not turn over information related to the pending criminal case. The deputy also reviewed Cutrone's complaint and determined that some of the alleged violations would apply only to an officer "while on duty executing his/her official capacity as a Peace Officer" and that he "could not determine based on the evidence [he] reviewed that Leonard" had violated one of the identified conduct provisions. Finally, Deputy Wisch noted that he "did not interview Leonard or any other involved parties or witnesses due to the fact that the Wichita County Sheriff's Office did not conduct the criminal investigation and was only tasked with the review and interpretation of applicable policy."

police department Operating Guidelines, the City's Code of Integrity, and the City's Employee Conduct requirements.

However, Leonard specifically alleged in his fourth amended petition that at the later SOAH hearing about his TCOLE F-5 form, Cutrone testified that "he conducted no investigation, he completed no interviews, and he reviewed no evidence."

We conclude that Leonard at least *pleaded* a facially valid ultra vires claim that Cutrone failed to comply with Section 614.023(c) by terminating Leonard's employment for the reason alleged in the complaint without first conducting an investigation and without evidence to support the precise complaint about which Leonard was notified before his termination. *See Treadway v. Holder*, 309 S.W.3d 780, 786 (Tex. App.—Austin 2010, pet. denied); *Turner v. Perry*, 278 S.W.3d 806, 823–24 (Tex. App.—Houston [14th Dist.] 2009, pet. denied);[30] *see also Hall*, 508 S.W.3d at 238 (noting that the basic justification for ultra vires suits is to reassert control over a state agent who is exceeding the bounds of his granted authority or if his acts conflict with the law itself). *But cf. Bracey v. City of Killeen*, 417 S.W.3d 94, 101–02, 109–113 (Tex.

---

[30]In *Guthery v. Taylor*, 112 S.W.3d 715, 723–24 (Tex. App.—Houston [14th Dist.] 2003, no pet.), the court of appeals—after determining that the trial court erred by concluding that officials had not violated Section 614.023—rendered judgment ordering Guthery's suspension withdrawn and the restoration of Guthery's back pay and benefits. Although the Texas Supreme Court later abrogated *Guthery*'s holding that Section 614.023 had been violated, it did not address *Guthery*'s appellate remedy. *See Colorado County*, 510 S.W.3d at 451.

App.—Austin 2013, no pet.) (holding that Chapter 614 does not compel civil-service hearing examiner to automatically reinstate employee whose employment was terminated in violation of Section 614.023). Although Cutrone's attached letter is some indication that he investigated the complaint pursuant to Section 614.023(c), in the context of the rest of Leonard's live petition, the most that Cutrone's letter does is show that a fact issue might exist—did Cutrone actually review the materials he said he reviewed in the April 24, 2019 letter, or did he truthfully testify later at the SOAH hearing that he never interviewed anyone or investigated the complaint? *See Rangel*, 595 S.W.3d at 205 (reciting that standard of review requires us to liberally construe the pleadings, take all factual assertions as true, and look to the plaintiff's intent when determining if the plaintiff has alleged facts that affirmatively demonstrate jurisdiction). Appellees argue in reference to Leonard's ultra vires claims that "[b]eyond bare conclusory statements, [Leonard] did not allege a specific factual basis for his assertions that individual Appellees acted without legal authority." But Leonard's specific allegation about Cutrone's testifying that "he conducted no investigation, he completed no interviews, and he reviewed no evidence" is not conclusory. It is a statement of fact that may be controverted by contradictory evidence—which did not occur here—but it is nevertheless a statement of fact. *See, e.g.*, *1776 Energy Partners, LLC v. Marathon Oil EF, LLC*, No. 04-20-00304-CV, 2023 WL 2669669, at *10 (Tex. App.—San Antonio Mar. 29, 2023, no pet.).

53

Thus, the trial court erred by dismissing this part of Leonard's Section 614.023 claim as to prospective relief only.[31]  *See City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) ("*[U]ltra vires* claimants are only entitled to prospective relief."); *Heinrich*, 284 S.W.3d at 376.  We sustain his first issue in part as to this claim.

### c.  Violation of Chapter 101 of the Labor Code

In his live petition, Leonard argued that Appellees violated Chapter 101 of the Labor Code.  More specifically, he alleged that Appellees "acted with 'threats, force, intimidation, or coercion'[] to deny[] and abridge [his] right to work because of [his]

---

[31]The parties did not brief in this court or the trial court what part of Leonard's requested relief, if any, is prospective only.  Considering our limited remand, we believe that issue is best left for the trial court.  *See Hartzell v. S.O.*, 672 S.W.3d 304, 319–20 (Tex. 2023) (holding that suit seeking remedy of degree reinstatement and due-process hearing sought prospective relief); *Suarez v. Silvas*, No. 04-21-00113-CV, 2022 WL 379965, at *1, *7 (Tex. App.—San Antonio Feb. 9, 2022, no pet.) (mem. op.) (holding that remedy of reinstatement to former elected position was retrospective); *Bailey v. Dallas County*, No. 05-16-00789-CV, 2017 WL 6523392, at *4 (Tex. App.—Dallas Dec. 21, 2017, pet. denied) (mem. op.) (holding that remedy of reinstatement of civil-service grievance for hearing to be held was retrospective only); *Alphonso Crutch Life Support Ctr., Inc. v. Morath*, No. 03-15-00509-CV, 2016 WL 4729740, at *4 (Tex. App.—Austin Sept. 7, 2016, pet. denied) (mem. op.) (holding that suit to reinstate school's charter and enjoin Commissioner of Education from continuing to withhold state-allocated education funds sought prospective relief but was moot on its facts); *Hamilton v. Washington*, No. 03-11-00594-CV, 2014 WL 7458988, at *6 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.) (determining that remedy of reinstatement without backpay or benefits would be prospective relief but that it was impossible to provide on pleaded facts); *Ochoa v. City of Palmview*, No. 13-14-00021-CV, 2014 WL 7404594, at *7 (Tex. App.—Corpus Christi–Edinburg June 19, 2014, no pet.) (mem. op.) (determining that pleaded reinstatement remedy in that case was retrospective only).

membership in a labor organization." Specifically, Leonard cited Sections 101.203 and 101.301 as the bases for this cause of action.

Regardless of whether any provision of Chapter 101 of the Labor Code applies to the facts alleged here, nothing in that chapter waives the City's immunity from suit. *See City of Caldwell*, 2012 WL 3242742, at *4. Moreover, Leonard could not plead a valid ultra vires complaint under that Chapter.

Section 101.203 provides that a person who violates any provision of that subchapter—entitled "Secondary Picketing"—may be civilly liable for damages or subject to an injunction. Tex. Lab. Code Ann. § 101.203(a)–(b). The first section in that subchapter provides the prohibited action: "A person may not establish, call, participate in, or aid picketing at or near the premises of an employer with whom a labor dispute does not exist." *Id.* § 101.201. Leonard alleged no facts that would show a violation of this section by any of the Individual Defendants. Thus, he did not plead a valid claim under this section.

Section 101.301 provides that "[t]he right of a person to work may not be denied or abridged *because of membership* or nonmembership in a labor union or other labor organization"[32] and that "[i]n the exercise of the right to work, each person shall

---

[32]Section 101.001 provides that "persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment." Tex. Lab. Code Ann. § 101.001. And Section 101.053 provides that an employment contract that requires membership in a labor union or prohibits membership in a labor union is void. *See id.* § 101.053. Thus,

be free from threats, force, intimidation, or coercion." *Id.* § 101.301(a)–(b) (emphasis added). It also provides that "[a] person who violates this subchapter is liable to a person who suffers from that violation for all resulting damages." *Id.* § 101.301(c).

Not only did Leonard nonsuit his claim for damages, but also the following section of the Labor Code expressly authorizes only "[t]he attorney general or a district or county attorney" to sue to enjoin a violation of Section 101.301. *Id.* § 101.302. Accordingly, we hold that Leonard did not plead a valid claim under either section of Chapter 101 of the Labor Code.

### d. Violation of Section 180.001 of the Local Government Code

In his live petition, Leonard asserted that Appellees violated Section 180.001 of the Local Government Code.

Section 180.001(a) provides that "[a]n individual commits an offense if the individual coerces a police officer or a fire fighter to participate or to refrain from participating in a political campaign." Tex. Loc. Gov't Code Ann. § 180.001(a). Section 180.001(b) provides that "[a]n offense under this section is a misdemeanor and is punishable by a fine of not less than $500 or more than $2,000, confinement in the county jail for not more than two years, or both a fine and confinement." *Id.* § 180.001(b). Leonard has not cited any authority, nor have we found any, indicating that a plaintiff has a valid civil cause of action for the violation of

contrary to Appellees' assertion, Chapter 101 does not apply solely to protect Leonard from "being forced into joining the [A]ssociation."

56

Section 180.001. *See Bickham v. Dallas County*, 612 S.W.3d 663, 670 (Tex. App.—Dallas 2020, pet. denied) ("The fact that a statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person."); *see also Joyner v. DeFriend*, 255 S.W.3d 281, 283 (Tex. App.—Waco 2008, no pet.) ("Texas does not recognize private causes of action for penal code violations."). Accordingly, the trial court did not err by dismissing Leonard's claim for the alleged violation of Section 180.001.

## D. Claims against the Individual Defendants

For each cause of action—in addition to suing the Individual Defendants in their official capacities for ultra vires actions—Leonard also purported to sue them as individuals in their personal capacities. In addition to the claims already discussed, Leonard accused each of the Individual Defendants of engaging in official oppression and "abuse of authority"; he accused Stahr of initiating a malicious prosecution against him and Cutrone and Guevara of extortion by offering him an honorable discharge on his TCOLE F-5 form only if he resigned instead of having his employment terminated. Leonard pleaded on the one hand that these "illegal actions and omissions were not in the course and scope of employment or agency with" the City and, thus, that they were ultra vires acts. But he also pleaded alternatively that he was "not limited to *ultra vires* claims about [I]ndividual Defendants' violations of ministerial duties and legal duties."

Whether a claim is against a person in an individual or official capacity depends on "the nature of the liability sought to be imposed." *Heinrich*, 284 S.W.3d at 377 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106 n.14 (1985)). Leonard expressly nonsuited all of his damages claims. And the prospective remedies that he sought cannot be obtained from the Individual Defendants in their individual capacities.[33] Thus, we conclude that all of his allegations against the Individual Defendants are allegations against them in their official capacities.[34] *See id.*

To the extent, then, that Leonard attempted to bring ultra vires claims against the Individual Defendants for official oppression, abuse of authority, and extortion, he did not plead facially valid claims. Texas does not recognize a common law tort of

---

[33]Appellees claim that Cutrone is now the former City Manager, but Leonard has not conceded that fact, and the record does not show Cutrone's employment status with the City. Thus, whether Leonard can now obtain relief on his pleaded ultra vires claim against Cutrone for Cutrone's alleged failure to comply with Section 614.023(c) is a matter better left to the trial court to determine on remand. *See Stem v. Gomez*, 813 F.3d 205, 214–15 (5th Cir. 2016) (determining that state ultra vires UDJA claim against mayor was properly dismissed because mayor was not "the city official[] who had the power to terminate Stem's employment, actually did terminate his employment, and now ha[d] the power to reinstate him"); *Phillips v. McNeill*, 635 S.W.3d 620, 629, 631 (Tex. 2021) (providing that remedy for ultra vires failure to hold contested-case hearing required by statute was to render judgment "declaring that the Inspector General is required to docket a request for a contested-case hearing").

[34]Moreover, even if Leonard had pleaded valid equal-protection and dire-course-of-law constitutional claims, he cannot bring them against the Individual Defendants in their individual capacities. *See Edinburg Housing Auth. v. Ramirez*, No. 13-19-00269-CV, 2021 WL 727016, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, no pet.) (mem. op.) (addressing equal-protection and due-course-of-law claims).

official oppression, *Johnson v. Boehnke*, No. 03-19-00200-CV, 2019 WL 4458797, at *3 n.3 (Tex. App.—Austin Sept. 18, 2019, no pet.) (mem. op.), or impose civil liability for "extortion," *Jackson v. Storts*, No. 01-19-00003-CV, 2021 WL 342992, at *3 n.4 (Tex. App.—Houston [1st Dist.] Feb. 2, 2021, no pet.) (mem. op.), *Sampson v. Tex. Dep't of Pub. Safety*, No. 09-12-00537-CV, 2013 WL 3488255, at *2 (Tex. App.—Beaumont July 11, 2003, no pet.) (mem. op.). To the extent that the abuse-of-authority allegations in Leonard's live petition could be construed as a claim against the Individual Defendants for abuse of process, such a claim would be in the nature of an intentional tort, which we have already concluded is barred by Section 101.106(f) of the Civil Practice and Remedies Code. *See Pryor v. Moore*, No. 12-20-00137-CV, 2021 WL 1582722, at *2 (Tex. App.—Tyler Apr. 21, 2021, no pet.) (mem. op.). The same holds true for malicious prosecution. *See Stinson*, 435 S.W.3d at 793. Thus, Leonard did not plead facially valid ultra vires claims against the Individual Defendants for official oppression, abuse of authority, extortion, or malicious prosecution. We overrule his second issue.

## IV. Conclusion

We sustain Leonard's first issue in part and his third issue in part. We overrule the remainder of his first and third issues and his second, sixth through eighth, eleventh, and twelfth issues. But because they are not dispositive, we do not address

59

his fourth, fifth, ninth, and tenth issues.[35]  *See* Tex. R. App. P. 47.1.  We remand this case to the trial court on the claims that the trial court should not have dismissed: (1) that Appellees violated Leonard's rights to free speech and assembly by wrongfully terminating his employment because of his support of civil-service implementation at the police department and related Association involvement and (2) that Cutrone failed to comply with Section 614.023(c) before terminating Leonard's employment.  We also remand the case so that Leonard may be given the opportunity to replead the following claims only:  his equal-protection and due-course-of-law claims and the claim that he is entitled to additional rights pursuant to the "formal appeal procedure" delineated in the City's Personnel Handbook.  In all other respects, we affirm the trial court's judgment of dismissal.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  December 28, 2023

---

[35]Leonard argues in his ninth issue that the trial court erred by dismissing his claims against Tillman because of unreasonable delay in naming him as a party; as we have already noted, the pleas to the jurisdiction challenged whether the pleadings had alleged facially valid claims such that immunity was waived, and the trial court's rulings were made on that basis.  Leonard contends in his tenth issue that the trial court should not have dismissed any claims against Guevara based on attorney immunity.  Appellees raised attorney immunity in their plea to the jurisdiction and first amended plea to the jurisdiction, as well as their brief on appeal, but attorney immunity is an affirmative defense that has no bearing on a trial court's jurisdiction; thus, it is not relevant to our analysis.  *NFTD, LLC v. Haynes & Boone LLP*, 652 S.W.3d 546, 557 (Tex. App.—Houston [14th Dist.] 2022, no pet.).